IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK



UNITED STATES DISTRICT COURT
FILED
DEC 1 2 2025
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

UNITED STATES OF AMERICA,

v.

25-CR-208

DAVID JOSE GOMEZ CEGARRA,

Defendant.

## PLEA AGREEMENT

The defendant, **DAVID JOSE GOMEZ CEGARRA**, and the United States Attorney

for the Western District of New York (hereinafter "the government") hereby enter into a plea

agreement with the terms and conditions as set out below.

## I.      THE PLEA AND POSSIBLE SENTENCE

1.      The defendant agrees to waive indictment and plead guilty to a one-count

Information, which charges a violation of Title 18, United States Code, Section 2113(b) (bank

larceny), for which the maximum possible sentence is a term of imprisonment of 10 years, a

fine of $250,000, a mandatory $100 special assessment and a term of supervised release of 3

years.  The defendant understands that the penalties set forth in this paragraph are the

maximum penalties that can be imposed by the Court at sentencing.

2.      The defendant understands that, if it is determined that the defendant has

violated any of the terms or conditions of supervised release, the defendant may be required

to serve in prison all or part of the term of supervised release, up to 2 years, without credit for

time previously served on supervised release. As a consequence, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.   ELEMENTS AND FACTUAL BASIS

3.   The defendant understands the nature of the offense set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

    a.    That the defendant took or carried away money belonging to, or in the care, custody, control, management, or possession of a credit union;

    b.    That at that time, the credit union was a federal credit union, the deposits of which were insured by the National Credit Union Administration;

    c.    That the defendant took and carried away such property or money with the intent to steal; and

    d.    That such money exceeded $1,000 in value.

## FACTUAL BASIS

4.   The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

    a.    On or about October 5, 2024, in the Western District of New York and elsewhere, DAVID JOSE GOMEZ CEGARRA did take and carry away, with intent to steal and purloin, money of a value exceeding $1,000, namely, approximately $109,620.00 in United States Currency, belonging to and in the care, custody, control, management, and possession of Radius Federal Credit Union, 2853 Delaware Ave., Kenmore, New York, a federal credit union the deposits of which were insured by the National Credit Union Administration, in violation of Title 18, United States Code, Section 2113(b).

b. During each incident described below, GOMEZ CEGARRA and his co-conspirators utilized an illicit technique known as "ATM Jackpotting," in which they either removed an ATM's cover and infected its hard drive with malware or removed the entire hard drive and replaced it with an infected hard drive. This technique allows an individual to assume control of an ATM and cause it to dispense currency.

c. On October 5, 2024, GOMEZ CEGARRA, working with several co-conspirators, stole $109,620.00 from an ATM located at Radius Federal Credit Union in Kenmore, NY. Radius Federal Credit Union is a federal credit union, the deposits of which are insured by the National Credit Union Administration.

d. The following day, on October 6, 2024, GOMEZ CEGARRA, working with several co-conspirators, stole $58,000.00 from an ATM located at St. Mary's Federal Credit Union in Framingham, MA. St. Mary's Federal Credit Union is a federal credit union, the deposits of which are insured by the National Credit Union Administration.

e. On October 17, 2024, GOMEZ CEGARRA, working with several co-conspirators, stole $21,600.00 from an ATM located at First National Bank of Dryden in Dryden, NY. First National Bank is a bank, the deposits of which are insured by the Federal Deposit Insurance Corporation.

f. On November 11, 2024, GOMEZ CEGARRA, working with several co-conspirators, stole $105,600.00 from two separate Community First Bank ATMs in Mount Vernon, Il. Community First Bank is a bank, the deposits of which are insured by the Federal Deposit Insurance Corporation.

g. The defendant admits that the total loss amount stemming from this ATM Jackpotting scheme was in excess of $250,000.00.

## III. SENTENCING GUIDELINES

5. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

6. The government and defendant agree that Guidelines § 2B1.1(a)(2) applies to the offense of conviction and provide for a base offense level of **6**.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

7. The government and the defendant agree that the following adjustment to the base offense level does apply:

   a. The twelve-level increase pursuant to Guidelines § 2B1.1(b)(1)(G) (the total loss amount, including relevant conduct, was in excess of $250,000)

   b. The two-level increase pursuant to Guidelines § 2B1.1(b)(10)(C) (offense involving sophisticated means)

## ADJUSTED OFFENSE LEVEL

8. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is **20**.

## ACCEPTANCE OF RESPONSIBILITY

9. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility), and further agrees to move the Court to apply the additional one (1) level decrease of Guidelines § 3E1.1(b), which would result in a total offense level of **17**.

## CRIMINAL HISTORY CATEGORY

10. It is the understanding of the government and the defendant that the defendant's criminal history category is **I**. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## ADJUSTMENT FOR ZERO-POINT OFFENDER

11. It is the understanding of the government and the defendant that the defendant meets the criteria set forth in Guidelines § 4C1.1(a)(1)–(11) (adjustment for certain zero-point offenders), and as a result, a **two-level** downward adjustment applies, and the adjusted offense level is **15**.

## GUIDELINES' APPLICATION, CALCULATIONS, AND IMPACT

12. It is the understanding of the government and the defendant that, with a total offense level of **15** and a criminal history category of I, the defendant's sentencing range would be a term of imprisonment of **18 to 24 months**, a fine of **$7,500 to $75,000**, and a period of supervised release of **1 to 3 years**. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in ¶ 1 of this agreement.

13.     The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

14.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

15.     In the event the Court contemplates any Guidelines adjustments, departures, or calculations different from those agreed to by the parties above, the parties reserve the right to answer any inquiries by the Court concerning the same.

## IV.     STATUTE OF LIMITATIONS

16.     In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any federal criminal offense which

is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.     <u>IMMIGRATION CONSEQUENCES</u>

17.     The defendant acknowledges that the defendant is not a citizen of the United States. The defendant understands that if the defendant is not a citizen of the United States, the defendant's guilty plea and conviction make it very likely that the defendant's removal from the United States is presumptively mandatory, and that, at a minimum, the defendant is at risk of being removed or suffering other adverse immigration consequences. The defendant is on notice that the defendant's ability to enter, remain, and/or reside in the United States is subject to the laws, regulations, and associated policies of the Department of Homeland Security. The defendant understands that any effect that the defendant's conviction in this action will have upon the defendant's immigration status, that is, possible removal, denaturalization, or other immigration consequence, is the subject of a separate proceeding. The defendant has had an opportunity to fully determine what the consequences of the defendant's conviction may be on the defendant's immigration status, and the defendant understands that no one, including the defendant's attorney or the district court, can predict to a certainty the effect of the defendant's conviction on the defendant's immigration status. The defendant nevertheless affirms that the defendant wants to plead guilty regardless of any immigration consequences that the guilty plea may entail, even if the consequence is the defendant's automatic removal from the United States.

18. The defendant understands that the defendant is bound by the guilty plea regardless of the immigration consequences of the plea. Accordingly, the defendant waives any and all challenges to the guilty plea and to the sentence based on those consequences, and agrees not to seek to withdraw the guilty plea or to file a direct appeal or any kind of collateral attack challenging the guilty plea, conviction, or sentence, based on the immigration consequences of the guilty plea, conviction, or sentence. This waiver does not preclude the defendant from raising a claim of ineffective assistance of counsel in the appropriate forum.

## VI.    GOVERNMENT RIGHTS AND OBLIGATIONS

19.    The defendant understands that the government has reserved the right to:

a.    provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.    respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    advocate for a specific sentence consistent with the terms of this agreement including the amount of restitution and/or a fine and the method of payment; and

d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

20.    At sentencing, the government will move to dismiss the Criminal Complaint pending against the defendant under Magistrate's No. 25-mj-5055.

21.     The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VII.     RESTITUTION AND FINANCIAL PENALTY PROVISIONS

22.     The defendant understands, and the parties agree, that the offense of conviction is a offense listed under Title 18, United States Code, Section, 3663A(c)(1), and therefore the Court must require restitution in the amount of $294,820.00 to be paid to the victims in this matter, listed below, as part of the defendant's sentence as part of the sentence pursuant to Sentencing Guidelines § 5E1.1 and Title 18, United States Code, Section 3663A. The defendant understands that defendant will not be entitled to withdraw the plea of guilty based upon any restitution amount ordered by the Court. The defendant understands that a total of $294,820.00 will be paid to the victims as follows:

| Victim Name | Loss Amount |
|---|---|
| Radius Federal Credit Union | $109,620.00 |
| St. Mary's Federal Credit Union | $58,000.00 |
| First National Bank of Dryden | $21,600.00 |
| Community First Bank | $105,600.00 |
| | |
| TOTAL | $294,820.00 |

23.     The defendant agrees that the defendant will not oppose bifurcation of the sentencing hearing under Title 18, United States Code, Section 3664(d)(5) if the victims' losses are not ascertainable prior to sentencing.

24. The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. The defendant agrees to make complete financial disclosure to the government by truthfully executing a sworn financial statement by the deadline set by the government, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the government, including, but not limited to, executing authorization forms for the government to obtain tax information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the government relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

25. The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and will be: (i) subject to immediate

enforcement as provided for in Title 18, United States Code, Section 3613, and (ii) submitted to the Treasury Offset Program (TOP) so that any federal payment or transfer of returned property the defendant receives may be offset and applied to federal debts but will not affect any periodic payment schedule set by the Court.

26. Under the TOP program, the Department of the Treasury will reduce or withhold any of the defendant's eligible Federal payments by the amount of the defendant's debt. This "offset" process is authorized by the Debt Collection Act of 1982, as amended by the Debt Collection Improvement Act of 1996 and the Internal Revenue Code. The government hereby provides the defendant with notice that 60 days after sentencing, unless the monetary judgment(s) ordered by the Court is (are) paid in full immediately after sentencing, the government will refer the outstanding monetary judgment to TOP for the offset of any pending federal payments, and the defendant agrees not to object or contest any such action by the government and waives any further notice.

27. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the government to enforce the judgment. Further, the defendant agrees not to challenge or dispute any efforts by the government to enforce collection of any monetary penalties ordered by the Court.

28. The defendant understands and agrees that under Title 18, United States Code, Section 3664(m), the government may use all available and reasonable means to collect

restitution, and pursuant to Title 18, United States Code, Section 3664(n), if the defendant is ordered to pay restitution, or pay a fine, and receives substantial resources from any source, including inheritance, settlement, or other judgment, during a period of incarceration, the defendant shall be required to apply the value of such resources to any restitution or fine still owed without objection.

29. The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the government and/or agencies thereof.

30. To the extent that the defendant has an interest, the defendant authorizes the District Court Clerk to release any funds posted as security for the defendant's appearance bond in this case, which funds shall be applied to satisfy the financial obligation(s) of the defendant pursuant to the judgment of the Court.

31. The defendant is aware that voluntary payment of restitution prior to adjudication of guilt is a factor in considering whether the defendant has accepted responsibility under United States Sentencing Guidelines §3E1.1.

## VIII.  APPEAL RIGHTS

32.     The defendant knowingly waives the right to appeal and collaterally attack the defendant's conviction in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255, and/or Section 2241. In addition to any other claims the defendant might raise, the defendant knowingly waives the right to challenge the conviction based on: (1) any non-jurisdictional defects in the proceedings prior to entry of this plea; (2) a claim that the statutes to which the defendant is pleading guilty are unconstitutional (except in the event that, in the future, the Supreme Court finds the statute in question unconstitutional); and (3) a claim that the conduct admitted in the Factual Basis of this plea agreement does not fall within the scope of the statutes to which the defendant is pleading guilty.

33.     The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack, in any proceeding, including but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment of **18 to 24 months**, a fine of **$7,500 to $75,000**, and a period of supervised release of **1 to 3 years**, notwithstanding the manner in which the Court determines the sentence. The defendant further knowingly waives the right to appeal and/or collaterally attack any condition of supervised release imposed by the Court for which the defendant had notice, including from a recommendation by the Probation Office in the Presentence Investigation Report, and did not object. In the event of an appeal of the

defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

34. The defendant understands that by agreeing not to collaterally attack the conviction or sentence in any proceeding, including, but not limited to, an application under Title 28, United States Code, Section 2255 and/or Section 2241, the defendant is waiving the right to challenge the conviction or sentence in the event that, in the future, the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

35. The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment of **18 to 24 months**, a fine of **$7,500 to $75,000**, and a period of supervised release of **1 to 3 years,** notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

36. By entering this plea of guilty, the defendant waives any and all right to withdraw the defendant's plea or to attack the defendant's conviction or sentence, either on direct appeal or collaterally, on the ground that the government has failed to produce any discovery material (other than material the government was required to produce under *Brady v. Maryland* and its progeny), that has not already been produced as of the date of the signing of this Agreement.

37. Notwithstanding the foregoing, nothing in the Appeal Rights section of this plea agreement shall be construed to be a waiver of whatever rights the defendant may have to assert claims of ineffective assistance of counsel, whether on direct appeal, collateral review, or otherwise.

### IX. TOTAL AGREEMENT AND AFFIRMATIONS

38. This plea agreement represents the total agreement between the defendant, **DAVID JOSE GOMEZ CEGARRA**, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

MICHAEL DIGIACOMO
United States Attorney
Western District of New York

BY: _____
JEFFREY E. INTRAVATOLA
Assistant United States Attorney

Dated: December 12, 2025

I have read this agreement, which consists of pages 1 through 16. I have had a full opportunity to discuss this agreement with my attorney, John Morrissey, Esq. I agree that it represents the total agreement reached between me and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____
DAVID JOSE GOMEZ CEGARRA
Defendant

Dated: December 12, 2025

_____
JOHN MORRISSEY, ESQ.
Attorney for the Defendant

Dated: December 12, 2025